# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## STATESVILLE DIVISION
### 5:20-cv-00141-KDB
### (5:19-cr-00033-KDB-DCK-1)

| | | |
|---|---|---|
| ANTONIO CARNELL WHITE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| ——————————————————— | ) | |

**THIS MATTER** is before the Court on Petitioner's Motion for Relief from Judgment Under Rule 60(B)(1), (3), (4), and (6).  [CV Doc. 15].[1]

## I.     BACKGROUND

On August 2, 2018, a search warrant was executed at Petitioner Antonio Carnell White's home in Hickory, North Carolina.  [CR Doc. 18 at ¶ 14: Presentence Investigation Report (PSR)]. Petitioner was in the driver's seat of a car on the property when the warrant was executed.  The officers found several controlled substances in the seat beside Petitioner, including crystal methamphetamine, cocaine base, cocaine, and suspected Xanax pills, and a stolen firearm under the driver's seat.  [Id. at ¶¶ 15-17].  Officers also found a total of 19 firearms in the house, which Petitioner shared with his father.  [Id. at ¶ 18].  Petitioner admitted to possessing more than eight (8), but fewer than 24, firearms; to possessing a firearm in connection with a felony controlled

---

[1] Citations to the record herein contain the relevant document number referenced preceded by either the letters "CV," denoting that the document is listed on the docket in the civil case file number 5:20-cv-00141-KDB, or the letters "CR," denoting that the document is listed on the docket in the criminal case file number 5:19-cr-00033-KDB-DCK-1.

substance offense; that the firearms were manufactured outside the State of North Carolina and both traveled in or affected interstate commerce before being seized on August 2, 2018; and that Petitioner was previously convicted of a felony punishable by a term of imprisonment exceeding one year and prohibited from possessing any firearms. [Id. at ¶¶ 17, 20; CR Doc. 11 at ¶¶ 2-5: Factual Basis].

Between the ages of 16 and 28, Petitioner received numerous convictions in North Carolina state court. [CR Doc. 18 at ¶¶ 39-57; see also, id. at ¶¶ 62-76]. For many of these convictions, Petitioner received suspended prison sentences. For some, Petitioner received a suspended sentence that was later activated after a probation violation. For instance, in 2015, Petitioner was convicted of felony cocaine possession and possession with intent to sell or deliver marijuana and sentenced to six (6) to 17 months' imprisonment, suspended, with 24 months supervised probation. [Id. at ¶¶ 51]. In 2017, this sentence was activated when Petitioner's probation was revoked on additional drug charges, including possession with intent to sell or deliver marijuana and felony possession of schedule II controlled substances. [Id. at ¶¶ 51-52]. These charges were consolidated for judgment and Petitioner was sentenced to a term of eight (8) to 19 months' imprisonment. [Id. at ¶ 52].

On April 17, 2019, a grand jury indicted Petitioner and charged him with one count of being a felon-in-possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count One); one count of possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count Two); and one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Three). [CR Doc. 1: Bill of Indictment].

Petitioner agreed to plead guilty to Count One, being a felon-in-possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and the Government agreed to dismiss Counts Two and Three. [CR Doc. 10 at ¶¶ 1-2: Plea Agreement]. In the plea agreement, Petitioner stipulated to the factual basis. [Id. at ¶ 11]. It provided, in pertinent part, as follows:

> 1. On August 2, 2018, in Catawba County in the Western District of North Carolina, [Petitioner] knowingly and intentionally possessed a Smith & Wesson Bodyguard .380 semi-automatic pistol bearing serial number KBH5163 and a BRNO Model 52 7.62 caliber semi-automatic pistol bearing serial number E17228 ("FIREARMS").

> 2. In total, [Petitioner] possessed more than eight, but less than twenty-four, firearms on August 2, 2018.

> 3. The FIREARMS were manufactured outside the State of North Carolina and both traveled in or affected interstate or foreign commerce before being seized from [Petitioner] by law enforcement on August 2, 2018.

> 4. On August 2, 2018, [Petitioner] was prohibited by federal law from possessing any firearms. [Petitioner] was previously convicted of a felony criminal offense punishable by imprisonment for a term exceeding one year.

> 5. On August 2, 2018, [Petitioner] possessed the FIREARMS in connection with a felony controlled substance offense.

[CR Doc. 11 at 1-2]. At the Rule 11 plea colloquy, Petitioner testified under oath that he was guilty of the § 922(g) charge, that he understood and agreed to be bound by the terms of his plea agreement, and that he had read, understood, and agreed with the factual basis. [CR Doc. 13 at ¶¶ 24, 26, 30-31: Acceptance and Entry of Guilty Plea]. The Magistrate Judge accepted Petitioner's guilty plea, finding that it was knowingly and voluntarily made. [Id. at p. 4].

On June 21, 2019, the day after Petitioner's guilty plea was accepted, the United States Supreme Court decided Rehaif v. United States, 139 S.Ct. 2191 (2019). In Rehaif, the Supreme

Court "conclude[d] that in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." 139 S.Ct. at 2200. Prior to Petitioner's sentencing, a probation officer prepared a PSR. [CR Doc. 18]. The probation officer recommended a Total Offense Level (TOL) of 31 and a criminal history category of VI, which yielded a guidelines range of 188 to 235 months' imprisonment. [Id. at ¶¶ 36, 59, 94]. The statutory maximum sentence under 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2) was, however, 10 years. [Id. at ¶ 93]. Because the statutorily authorized maximum sentence was less than the applicable guidelines range, the guidelines term of imprisonment was 120 months.[2] [Id. at ¶ 94 (citing U.S.S.G. §5G1.1(a))]. As noted, Petitioner's criminal history was substantial, including multiple felonies. [See id. at ¶¶ 39-57; see also id. at ¶¶ 62-76].

On October 4, 2019, before sentencing, the parties filed a Joint Notice of Waiver and Stipulation regarding Rehaif "in anticipation of" and "to facilitate the sentencing" in this matter. [CR Doc. 20 at 1-2: Joint Notice of Waiver and Stipulation ("Rehaif Notice")]. It was executed by Petitioner, his attorney,[3] and the Government. [Id. at 2]. Therein, the parties noted that "[Petitioner] has discussed the Rehaif decision with his attorney and elects to stand by the guilty plea he previously entered and proceed to sentencing in this matter." [Id. at 1]. Petitioner admitted that, at the time he committed the § 922(g) offense, he knew he had been previously convicted of a crime punishable by imprisonment for a term exceeding one year. Petitioner also admitted that

---

[2] Without the plea agreement, if Petitioner had been convicted on Count Three, he would have been subjected to a mandatory consecutive sentence of at least five years. [See CR Doc. 18 at ¶ 95]. Moreover, the maximum sentence on conviction for Count Two would have been twenty years. 18 U.S.C. § 841(b)(1)(C).

[3] Petitioner's attorney, Cecilia Oseguera, was recently appointed by North Carolina Governor Roy Cooper to serve as District Court Judge in District 26, which serves part of Mecklenburg County.

he was, in fact, guilty of the § 922(g) offense and that he entered his guilty plea knowingly, intelligently, and voluntarily. Petitioner affirmed that he did not wish to withdraw his guilty plea. Finally, Petitioner waived any right to contest his conviction on grounds related to Rehaif. [Id. at 1-2].

Petitioner was sentenced on October 8, 2019. At the sentencing hearing, the Court discussed with Petitioner the Rehaif Notice and the impact of Rehaif on Petitioner's guilty plea, as follows:

> THE COURT: … in an abundance of caution, Mr. White, I'm going to go through a couple of elements in here just to make sure that you understand.
>
> The indictment against you was appropriate as matter of law at the time it was brought. But since your indictment, the Supreme Court has ruled that there is an additional element that the Government must prove in order for you to be guilty, that is the additional element that was not recited to you when we went through your guilty plea was that you must have known at the time of your possession of the weapon that you had been convicted of a crime punishable by more than a year.
>
> Do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And your indictment did not charge you that way. So you would have the right, because this would be a fair and just reason, if you wanted, to withdraw your guilty plea. You would have a right to do so and Court could grant that motion. Do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And notwithstanding that, do you still want to go forward with the guilty plea in your sentencing today?
>
> THE DEFENDANT: Yes, sir.

[CR Doc. 29 at 2-3: Sentencing Tr.]. The Court then affirmed that Petitioner's guilty plea was knowing and voluntary and proceeded with sentencing. [CR Doc. 29 at 3]. Adopting the PSR, the Court sentenced Petitioner to a term of imprisonment of 120 months on Count One. [CR Doc. 21 at 2: Judgment; CR Doc. 22 at 1: Statement of Reasons]. Judgment on Petitioner's conviction was entered the same day. [CR Doc. 21]. Petitioner did not directly appeal his conviction or sentence.

Petitioner timely filed a motion under 28 U.S.C. § 2255 to vacate, set aside or correct sentence. [CV Doc. 1]. In this motion, he asserted a claim for ineffective assistance of counsel, stating "counsel failed to inform Mr. White of all the elements of the crime charged (922g)." [Id. at 4]. Petitioner also claimed that "the Federal Government lacked subject-matter to convict him under 922(g)." [Id. at 5]. Petitioner made no other claims or allegations and failed to state what relief he sought. [See CV Doc. 1]. On initial screening of Plaintiff's motion to vacate, the Court noted Petitioner's failure to submit his motion under penalty of perjury and ordered him to file an amended motion under penalty of perjury. [CV Doc. 2]. Petitioner complied. [CV Doc. 3]. The amended motion to vacate was also timely. [See id. at 12].

In his amended motion, Petitioner again asserted a claim of ineffective assistance of counsel, stating that "[c]ounsel failed to inform Mr. White of all elements of 922(g) charge before entering into plea. As the Supreme Court made clear in it's rueling in Rehaif No. 17-9560 Decided June 21 2019." [Id. at 4 (errors uncorrected)]. Petitioner made no other claims and stated no other facts or grounds in support of his amended motion.[4] [See CV Doc. 3]. For relief, Petitioner asked the Court to vacate his conviction under § 922(g) and to dismiss the Indictment. [Id. at 12]. In its

---

[4] As noted, Petitioner claimed in his original motion that the federal government lacked subject matter jurisdiction to convict him under § 922(g). [CV Doc. 1 at 5]. As found by the Court in its Order dismissing Petitioner's amended motion to vacate, [CV Doc. 10 at 5 n. 3], even if Petitioner had maintained this claim, it is without merit. There is no question this Court had jurisdiction to convict Petitioner on this charge. See 18 U.S.C. § 3231.

boilerplate initial screening order on Petitioner's amended motion to vacate, the Court found that Petitioner "ha[d] asserted a colorable claim for relief cognizable under § 2255(a)" and ordered the Government to respond. [CV Doc. 4 at 1].

In response, the Government moved to dismiss Petitioner's amended motion to vacate. [CV Doc. 6]. The Government argued that Petitioner's claim of ineffective assistance for his attorney's alleged "fail[ure] to inform Mr. White of all elements of 922(g) charge before entering plea" failed for at least three reasons: (1) the allegation is conclusory and fails to identify which elements counsel purportedly failed to inform Petitioner about or explain how such omission was ineffective assistance; (2) the record refutes Petitioner's allegation; that is, Petitioner swore under oath at the plea hearing that he had discussed the charges with his attorney and that he fully understood them, and then later, after Rehaif, Petitioner signed the Rehaif Notice, which addressed the impact of that decision, and represented that he had discussed the Rehaif decision with his attorney; and (3) the allegation is insufficient as a matter of law because Petitioner did not allege that, had he received different advice, he would not have pleaded guilty and would have insisted on going to trial, and such allegation would fail nonetheless because, with full knowledge of Rehaif, Petitioner represented to the Court that he wanted to "stand by his guilty plea." [CV Doc. 6 (citations omitted)].

Petitioner responded to the Government's motion to dismiss [CV Doc. 8] and, at the same time, moved to amend his motion to vacate, stating only "Gary vs. United States 4.th Circute" [CV Doc. 9 (errors uncorrected)]. In his response, which was filed nearly 15 months after entry of his criminal judgment, Petitioner, for the first time, claimed that he "would not have signed the plea if not for the [Rehaif] error" by counsel and would have proceeded to trial. [CV Doc. 8 at 2-3]. In

his response, Petitioner asked that his plea and conviction be vacated and argued that his immediate release was warranted. [Id. at 1].

On May 12, 2021, the Court denied Petitioner's amended motion to vacate. [CV Doc. 10]. The Court concluded that Petitioner's claim was conclusory and insufficient as a matter of law; that Petitioner failed to allege that, had he received different advice, he would not have pleaded guilty and insisted on going to trial, noting that Petitioner asked that his conviction be vacated all together; that Petitioner had waived any Rehaif claim in executing the Rehaif Notice before sentencing; that Petitioner admitted that he knew of his prohibited status at the time he committed the § 922(g) offense; and that Petitioner affirmed that he entered his guilty plea "knowingly, intelligently, and voluntarily." [Id. at 6-7]. Petitioner did not appeal. Two months later he filed a one-paragraph motion "to reconcider the petitioners dismissed 2255," [CV Doc. 12 (errors uncorrected)], which the Court denied, [CV Doc. 13].

On May 9, 2022, just shy of a year after the Court denied his amended motion to vacate, Petitioner, now represented by counsel, filed the pending Rule 60(b) motion.[5] [CV Doc. 15]. The Government responded [CV Doc. 20] and Petitioner replied [CV Doc. 22]. Thereafter, the undersigned directed that the plea and sentencing hearings over which the Magistrate Judge and this Court, respectively, presided be transcribed, [see CV Docs. 23, 24; CR Docs. 28, 29], and the Court conducted a hearing to discuss certain issues raised in and by Petitioner's Rule 60(b) motion,[6] [see 10/13/2022 Docket Entry].

---

[5] Petitioner's arguments are so numerous and hyper-technical to be unamenable to meaningful summary here. [See CV Doc. 15]. On that point, while they have all been carefully considered, the Court here addresses only those arguments bearing on the resolution of the motion before it.

[6] As a threshold question, the Court inquired of Petitioner's counsel whether Petitioner understands that, if the Court were to grant his § 2255 motion to vacate, he would face the substantial likelihood of a longer prison sentence. Petitioner's counsel indicated that Petitioner was aware he would have a "clean state" if the motion were granted.

8

## II.     STANDARD OF REVIEW

In pertinent part, Rule 60(b) of the Federal Rules of Civil Procedure provides that the Court may relieve a party from a final judgment for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; …
> (3) fraud …, misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void; … or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  The Rule "codifies inherent judicial powers that were previously exercised through a gaggle of common-law writs, which the rule abolishes."  United States v. Winestock, 340 F.3d 200, 204 (4th Cir. 2003).  "[A] Rule 60(b) motion seeking relief from a final judgment is not a substitute for a timely and proper appeal." Dowell v. State Farm Fire and Cas. Auto. Ins. Co., 993 F.2d 46, 48 (4th Cir. 1993) (citation omitted).  "Therefore, before a party may seek relief under Rule 60(b), a party first must show 'timeliness, a meritorious [claim], [and] a lack of unfair prejudice to the opposing party."  Id. (citing Werner v. Carbo, 731 F.2d 204, 207 (4th Cir. 1984)). "After a party has crossed this initial threshold, he then must satisfy one of the six specific sections of Rule 60(b)."  Id. (citing id.). As to timeliness, a Rule 60(b) motion "must be made within a reasonable time," and for reasons (1), (2), and (3) no more than a year after entry of judgment. Fed. R. Civ. P. 60(c)(1).  When seeking relief under Rule 60(b)(6), the movant must also "show extraordinary circumstances justifying the reopening of a final judgment."  Gonzalez v. Crosby, 545 U.S. 524, 535 (2005) (internal quotation marks and alteration omitted.").

While Rule 60(b) is a rule of civil procedure, it applies to proceedings filed under 28 U.S.C. § 2255 "to the extent that [it is] not inconsistent with" applicable statutory provisions and rules. Rule 12, Rules Governing Section 2255 Proceedings for the United States District Courts; Gonzales, 545 U.S. at 534 ("Rule 60(b) has an unquestionably valid role to play in habeas cases.").

Rule 4(b) of the Rules Governing Section 2255 Proceedings, on the other hand, provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" to determine whether the petitioner is entitled to any relief on the claims set forth therein. A Court may resolve a motion to vacate if, after examining the record, it determines it can be resolved based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

### A. Jurisdiction

Under 28 U.S.C. § 2244(b), "[a] claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed." This rule is equally applicable to petitions brought under § 2255. See 28 U.S.C. § 2255(h). Thus, "[w]hen presented with a Rule 60(b) motion in a habeas proceeding, the district court's *first* inquiry must be to 'decide whether [the] Rule 60(b) motion filed by [the] habeas petitioner is a 'habeas corpus application' as [§ 2244(b)] uses that term.'" Richardson v. Thomas, 930 F.3d 587, 596 (4th Cir. 2019) (quoting Gonzalez, 545 U.S. at 530). "If so, the court must either dismiss the motion for lack of jurisdiction or transfer it to [the Fourth Circuit] so that [it] may perform [its] gatekeeping function under § 2244(b)(3)." Winestock, 340 F.3d at 207. "[A] district court has no discretion to rule on a Rule 60(b) motion that is functionally equivalent to a successive [§ 2255 motion]." Id. at 206.

Where a petitioner seeks relief from a judgment under Rule 60(b), courts must treat such a motion as seeking successive post-conviction relief when failing to do so would allow the applicant to evade the bar against relitigation of claims presented in prior application or the bar against litigation of claims not presented in a prior application. Winestock, 340 F.3d at 206 (requiring

district courts to review Rule 60(b) motions to determine whether such motions are tantamount to a Section 2255 motion). Regarding Rule 60(b) motions that are actually attempts at successive collateral review, the Fourth Circuit has stated:

> a motion directly attacking the prisoner's conviction or sentence will usually amount to a successive application, while a motion seeking a remedy for some defect in the collateral review process will generally be deemed a proper motion to reconsider.

Id. at 207. A district court may reopen non-merits-based denials or dismissals of a prisoner's habeas petition, "which resulted in no federal court having considered the merits of the claim at all." Richardson, 930 F.3d at 596.

Petitioner here argues that the pending motion is a true Rule 60(b) motion not warranting treatment as a successive § 2255 motion because it challenges "the court's 'failure to reach the merits.'" [CV Doc. 16 at 7 (citing Gonzalez, 545 U.S. at 538; Richardson, 930 F.3d at 596 (true Rule 60(b) motion "merely asserts that a previous ruling which *precluded* a merits determination was in error") (emphasis in original))]. Petitioner argues that he was denied "one 'full and fair opportunity' to challenge his conviction and sentence in a collateral proceeding," and therefore a merits-based determination, because the Court "twice determined [Petitioner] adequately pleaded colorable claims"[7] but did not appoint counsel or conduct an evidentiary hearing. [CV Doc. 16 (quoting In re Goddard, 170 F.3d 435, 437 (1999)); see also CV Doc. 16 at 7, 10-11 (citing, e.g., United States v. Magini, 973 F.2d 261, 265 (4th Cir. 1992))].

---

[7] Petitioner's claim that the Court twice decided that he had asserted a colorable claim is not well taken. The Court did not make this finding on initial screening of Petitioner's original motion to vacate [see CV Doc. 2] and, as noted, on initial screening of Petitioner's amended motion to vacate, the Court, using its standard form language in ordering the Government to respond, stated that Petitioner "ha[d] asserted a colorable claim for relief cognizable under § 2255(a)," [see CV Doc. 4].

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."  Schriro v. Landrigan, 550 U.S. 465, 474, 127 S.Ct. 1933 (2007); see Magini, 973 F.2d at 264  ("A federal court in a habeas proceeding must hold an evidentiary hearing when the petitioner alleges facts which, if true, would entitle her to relief.") (citation omitted).  "Where a colorable Sixth Amendment claim is presented, and where material facts are in dispute involving inconsistencies beyond the record, a hearing is necessary." Id. (citations omitted).  "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id.  The Fourth Circuit recently suggested that a failure to conduct an evidentiary hearing is not a defect in the collateral review process, in any event, explaining that if it "could ever be" a "defect in the integrity of the prior proceedings," "the purported 'defect' would not allow the district court to circumvent § 2244(b) in order to readjudicate the merits of a previously-raised claim or rely upon new Supreme Court precedent in doing so."  Richardson, 930 F.3d at 597.

Here, Petitioner alleged that "[c]ounsel failed to inform Mr. White of all elements of 922(g) charge before entering into plea … [a]s the Supreme Court made clear in … Rehaif" and nothing more.  [CV Doc. 3 at 4].  As discussed above, the Court addressed the merits of Petitioner's scant motion.  Petitioner argues now that the Court should have allowed and instructed Petitioner to amend his deficient motion to correct "purely technical errors" and hold a hearing "to develop the factual and legal issues."  [CV Doc. 16 at 17; see id. at 15-16].  Under Schriro, a hearing is used to test the truth of a habeas petitioner's factual allegations entitling him to relief, not to create space for a habeas petitioner to set out such facts for the first time. Now Petitioner asks the Court to do

what <u>Richardson</u> says it cannot – readjudicate the merits of a previously-raised claim on the ground that the Court should have but did not hold an evidentiary hearing.[8]

While the Court could have decided the motion without the Government's response, it choose not to in this case. Petitioner was not denied a merits-based determination of his motion to vacate simply because the Court did not appoint counsel and order a hearing after ordering the Government to respond. Even now, with two excellent counsel representing Petitioner, the Court is satisfied that its decision was the correct one. Moreover, even if the failure to order a hearing were an error on these superficial, technical grounds, it is not a defect in the integrity of the proceedings opening the door to relief under Rule 60(b). See <u>Richardson</u>, 930 F.3d at 597.

Because Petitioner seeks another chance to have the Court consider the merits of his motion to vacate, although this time with counsel, his Rule 60(b) motion is nothing more than a successive § 2255 motion over which the Court lacks jurisdiction absent Circuit-level authorization. The Court, therefore, must dismiss it. See <u>Winestock</u>, 340 F.3d at 207. For the sake of the appellate record, however, the Court will address the other threshold requirements to relief under Rule 60(b), including timeliness, the existence of a meritorious claim, and unfair prejudice. See <u>Werner</u>, 731 F.2d at 206-07.

---

[8] As a practical matter, counsel for Petitioner is underinformed regarding this Court's, and particularly the undersigned's, practices relative to ordering briefing in motions to vacate. For instance, the Court may order the Government to respond to a motion to vacate simply for the benefit of the Government's efforts in examining the record and briefing the issues raised. The Court may also order briefing where the issue or issues raised are generally ones cognizable under § 2255 but the Court could benefit from a better understanding of the Government's position relative to a particular petitioner and/or of the application of the often-developing law relative to the specific facts and circumstances at issue presented in the record. It seems counsel for Petitioner fails to appreciate the practical implications of the strained and overly technical argument they advance on this point. By their argument, the Court should forego ordering a response or be required to expend considerable resources and order that considerable resources be expended for an unnecessary hearing. The Court is not required to order an evidentiary hearing when the Government's response, together with the Court's own review of the record and governing law and precedent, lead the Court to conclude that a petitioner is not entitled to relief.

### B.    Timeliness

Rule 60(c)(1) requires that a Rule 60(b) motion must be made "within a reasonable time" after entry of judgment and sets one year as the outer limit of reasonableness when relief is sought based on excusable neglect, mistake, newly discovered evidence, or fraud.  Fed. R. Civ. P. 60(c)(1); see Williams v. Tero Tek Intern., Inc., No. JKB-10-2752, 2013 WL 1156055, at *1 (D. Md. Mar. 20, 2013) (noting that the one-year time limit set in Rule 60(c) "is merely the outer limit within which such motion may be presented"); Holland v. Virginia Lee Co., Inc., 188 F.R.D. 241, 248 (W.D. Va. July 23, 1999) (Rule 60(b) motions "must be made 'within a reasonable time,' with the further requirement that motions brought under subsections (1) through (3) of the rule be made not more than one year after judgment is entered").  Petitioner has the burden to show timeliness. Werner, 731 F.2d at 206-07.

The Fourth Circuit has "held on several occasions that a Rule 60(b) motion is not timely brought when it is made three to four months after the original judgment and no valid reason is given for the delay."  McLawhorn v. John W. Daniel & Co., Inc., 924 F.2d 535, 538 (4th Cir. 1991) (citing Central Operating Co. v. Utility Workers of America, 491 F.2d 245 (4th Cir. 1974), and Consolidated Masonry & Fireproofing, Inc. v. Wagman Constr. Corp., 383 F.2d 249 (4th Cir. 1967)).  See also, Wittenberg v. First Independent Mortg. Co., 599 Fed. App'x 463, 471 (4th Cir. 2013) (affirming denial of Rule 60(b) motion as untimely where it was filed nine months after disputed order and movant "[presented] no compelling explanation" for the delay).  This Court has previously held that, because the purpose of Rule 60(b) is "to permit the district court to correct an erroneous judgment and thereby avoid the necessity of an appeal," "a reasonable time for filing a Rule 60(b) motion should not exceed that allowed for an appeal."  Ferguson v. United States, 186 F.R.D. 340, 341 (W.D.N.C. Mar. 16, 1999) (finding Rule 60(b) motion untimely where not

filed within 60-day appeal window) (internal citation omitted); see Bradley v. United States, 51 F.Supp.2d 696, 697 (W.D.N.C. Mar. 24, 1999) (finding Rule 60(b) motion filed within time to file a notice of appeal timely). Although no prevailing hard and fast rule dictates reasonableness, these decisions inform the determination.

Petitioner argues that his motion is timely because it was "filed within a year of entry of the judgment" and because counsel has "worked diligently to research and prepare the motion" since contacted by Petitioner in late December 2021. [CV Doc. 16 at 7-8; CV Doc. 16-1 at ¶ 3: Powell Aff.]. One of Petitioner's two attorneys, Sarah Marie Powell, provides that she is a full-time Clinical Professor at Duke Law School, which "necessarily affected [her] progress in [Petitioner's] case." [CV Doc. 16-1 at ¶ 4; see CV Doc. 14: H. Jefferson Powell Notice of Appearance]. Ms. Powell lists various responsibilities incident to her professorship and obligations incident to other cases for which she was the sole appointed CJA counsel. [Id.]. Ms. Powell also cites "unexpected circumstances" she experienced in the months before she filed Petitioner's motion, including that her "younger daughter came down with COVID-19" in February 2022 and "older daughter had her first baby in January 2022." [Id. at ¶ 6]. Mr. Powell, Petitioner's other attorney, however, makes no representations regarding or informing this issue.

Counsel seems to misapprehend the Rule 60(c)(1) standard, nearly assuming that the motion is necessarily timely for having been filed within one year. This is not correct. Petitioner must show that the motion has been filed within a reasonable time and a one-year delay is not reasonable absent some compelling explanation for it. See Wittenberg, 599 Fed. App'x at 471. While Petitioner did not contact counsel until "late December" 2021, this initial delay is not excused simply because Petitioner was not represented by counsel during this time. Petitioner does not address this delay but rather only seeks to explain the delay from late December 2021 to

May 2022, when the motion was filed. After this initial delay of approximately seven months, counsel waited nearly five additional months after being contacted by Petitioner to file the motion. None of the reasons put forward, either alone or collectively, however, constitute compelling reasons for the delay in filing Petitioner's motion. That is, significant and substantial professionally and personally driven restraints on an attorney's time are commonplace and constant. Moreover, Mr. Powell provides no reason why he did not contribute to the timely preparation and submission of Petitioner's motion during this time. Thus, even if the Court had jurisdiction to examination timeliness, it would find that the Rule 60(b) motion was not filed within a reasonable time. See id., 599 Fed. App'x at 471.

### C.       Meritorious Claim

"Under all the provisions of Rule 60(b), a threshold condition for granting the relief is that the movant demonstrate that granting that relief will not in the end have been a futile gesture, by showing that she has a meritorious defense or claim." Boyd v. Bulala, 905 F.2d 764, 769 (4th Cir. 1990). Petitioner here claimed that his attorney failed to inform him of all elements of § 922(g) "as the Supreme Court made clear" in Rehaif before Petitioner pleaded guilty. [CV Doc. 3 at 4; see CV Doc. 1 at 4]. Thus, to proceed under Rule 60(b), Petitioner must show that he has a meritorious claim of ineffective assistance of counsel based on his attorney's pre-plea advice regarding the elements of § 922(g) as later informed by Rehaif, and construed broadly, the impact of Rehaif on Petitioner's decision to maintain his guilty plea.[9] He has not done so.

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient

---

[9] As discussed previously, Plaintiff's claim in his original motion to vacate that the Court "lacked subject-matter jurisdiction" to convict him under § 922(g), even if properly presented, is meritless.

performance by counsel and, second, that the deficient performance prejudiced him.  See Strickland v. Washington, 466 U.S. 668, 687-88 (1984).  In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010).

"The Sixth Amendment right to effective assistance of counsel 'extends to the plea-bargaining process.'"  United States v. Mayhew, 995 F.3d 171, 177 (2021) (quoting Lafler v. Cooper, 566 U.S. 156, 162, 132 S.Ct. 1376 (2021)).   Effective assistance of counsel at the plea-bargaining stage requires that defense counsel "communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."  Missouri v. Frye, 566 U.S. 134, 145, 132 S.Ct. 1399, 1408 (2012).  Moreover, "it is the responsibility of defense counsel to inform a defendant of the advantages and disadvantages of a plea agreement and the attendant statutory and constitutional rights that a guilty plea would forego."  Libretti v. United States, 516 U.S. 29, 50-51, 116 S.Ct. 356, 368 (1995).  Counsel, however, is not ineffective for failing to obtain a plea offer that a defendant is willing to accept.  See Weatherford v. Bursey, 429 U.S. 545, 561 (1977) (recognizing "there is no constitutional right to plea bargain").

"To avoid the distorting effects of hindsight, claims under Strickland's performance prong are evaluated in light of the available authority at the time of counsel's allegedly deficient performance.  A lawyer does not perform deficiently by failing to raise novel arguments that are unsupported by then-existing precedent."  United States v. Morris, 917 F3d 818, 823 (4th Cir. 2019) (quotation marks and internal citations omitted).  "Nor does counsel fall below Strickland's standard of reasonableness by failing to anticipate changes in the law, or to argue for an extension of precedent."  Id.

To establish prejudice, the petitioner must demonstrate there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. It is not sufficient to show the mere "'possibility of prejudice.'" Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1994) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)).

In considering the prejudice prong of the analysis, the Court "can only grant relief under … Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). That is, a petitioner must establish prejudice in the form of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Strickland, 466 U.S. at 694. Because he challenges the advice his attorney gave him in connection with his guilty plea, Petitioner must establish that he "would not have pleaded guilty and would have insisted on going to trial." Lee v. United States, 137 S.Ct. 1958, 1964 (2017). To meet this standard, Petitioner must prove "both subjectively that he would have gone to trial and that it would have been objectively reasonable to do so." United States v. Santiago, 632 Fed. App'x 769, 773 (4th Cir. 2015) (unpublished decision) (citing United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012)).

The petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). Courts, however, "should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." Lee, 137 S.Ct. at 1967. Rather, the court should look to contemporaneous evidence of his desire to pursue a particular course of action. Id. If the petitioner fails to meet this burden,

a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

Informed by these standards, the Court considers the merits of Petitioner's underlying § 2255 ineffective assistance claim. Petitioner claims that his attorney did not inform him of all the elements of the § 922(g) charge – as made clear by the Supreme Court in Rehaif – before Petitioner pleaded guilty. Petitioner pleaded guilty on June 20, 2019. Rehaif was decided the next day. Rehaif added a knowledge-of-status element to § 922(g) previously rejected by the Fourth Circuit and, in so doing, substantially changed the common understanding and practice in the Fourth Circuit and in this Court regarding prosecuting a defendant under that provision. See United States v. Langley, 62 F.3d 604-08 (4th Cir. 1995) (en banc) (holding defendant's knowledge of his felony status is not an essential element of offense under §§ 922(g)(1) and 924(a)(2), abrogated by Rehaif, 139 S.Ct. at 2191. Therefore, even if Petitioner established the technical truth of his allegation – that is, that his counsel did not inform him of all elements of a § 922(g) charge as later determined by Rehaif – he has not alleged facts supporting ineffective assistance of counsel. Under the circumstances here, Petitioner's counsel was not obliged to predict Rehaif.

Moreover, even if Petitioner's counsel had predicted Rehaif and had informed Petitioner of the potential of the knowledge-of-status element before Petitioner had pleaded guilty, nowhere does the record show that Petitioner did not know he was a felon when he possessed the 20 firearms underpinning the § 922(g) charge. Nor has Petitioner claimed at any point during or since the criminal proceedings that he did not know he was a felon. At best, Petitioner now argues that "it is entirely possible that **none** of White's state convictions before the federal offense were § 922(g) predicates," which is an assertion unsupported in fact. [See CV Doc. 16 at 20 (emphasis in

19

original)].  As such, foretelling <u>Rehaif</u> was not impactful to Petitioner's criminal case in any event. To that point, Petitioner would similarly be unable to show prejudice.

Under the circumstances here, Petitioner would have to show that, with the counsel he claims was lacking, he would have (1) pleaded not guilty and insisted on going to trial; (2) it would have been objectively reasonable for him to do so; and (3) the result of the proceeding would have been more favorable had he done so.  None of these elements, however, are supported by the record.  Even if the Court considered Petitioner's belated assertions that, with effective counsel, he would have pleaded not guilty and insisted on going to trial, the contemporaneous evidence wholly refutes this claim.  Despite Petitioner's current characterization of the Rehaif Notice,[10] the Notice evinces Petitioner's state of mind at the time of sentencing.  In it, Petitioner acknowledged that he was aware of the <u>Rehaif</u> decision, including its relevant holding, that he had discussed it with his attorney, and that he elected to maintain his guilty plea.  [CR Doc. 20 at 1].  Petitioner also admitted that, at the time he committed the § 922(g) offense, "he knew he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year."  [<u>Id.</u>].  Finally, Petitioner acknowledged that he knew he could move to withdraw his guilty plea in light of <u>Rehaif</u> and he choose not to.  [<u>Id.</u> at 1-2].  Petitioner signed the Notice, along with his attorney and the Government.  Moreover, as set out above, if the Court were to revisit the merits of Petitioner's § 2255 claim, the transcript of the sentencing hearing would only further corroborate Petitioner's knowledge of and state of mind relative to <u>Rehaif</u> before sentencing.  [<u>See</u> CR Doc. 29 at 2-3: Sentencing Tr.].

---

[10] Petitioner now claims that the Rehaif Notice was a "misleading document that was void and unenforceable on its face" "crafted to obscure its true character and legal significance." [CV Doc. 16 at 14, 21].

Then, even if Petitioner could convince the Court that, despite all competent evidence to the contrary, he would have insisted on going to trial, he cannot show it would have been objectively reasonable to do so.  In exchange for Petitioner's guilty plea, the Government agreed to dismiss his drug trafficking charge under 21 U.S.C. § 841(a), which carried twice the maximum statutory penalty of his felon-in-possession charge, 21 U.S.C. § 841(b)(1)(C).  Dismissal of the drug trafficking charge ensured a reduction in Petitioner's advisory guidelines range from 188 to 235 months to 120 months.  [See CR Doc. 18 at ¶ 94].  The Government also agreed to dismiss Petitioner's § 924(c) charge, which carried a consecutive mandatory minimum penalty of five years' imprisonment.  See 18 U.S.C. § 924(c)(1)(D)(ii); CR Doc. 18 at ¶ 95.  While conviction on those charges was not a foregone conclusion, the evidence supporting them was strong, [see CR Doc. 18 at 3-4], and Petitioner admitted to possessing a collection of firearms "in connection with a felony controlled substance offense, [id.; CR Doc. 11 at 2: Factual Basis].  As such, it would not have been objectively reasonable for Petitioner to have rejected the highly favorable plea agreement and to proceed to trial.  Nor does the record support that the outcome of his criminal case would have been more favorable had he done so.

In sum, Petitioner has not shown a meritorious claim of ineffective assistance of counsel such that allowing Petitioner's Rule 60(b) motion would be more than a "futile gesture."  Boyd, 905 F.2d at 769.

### D.    Lack of Unfair Prejudice

If the Court had jurisdiction to reach the merits of Petitioner's Rule 60(b) motion, and assuming *arguendo* timeliness and the existence of a meritorious claim, Petitioner would also have the burden to show that the Government would not suffer unfair prejudice if the judgment were set aside.  See United States v. Welsh, 879 F.3d 530, 533 (4th Cir. 2018). The prejudice factor,

however, "is of lesser importance." National Credit Union Admin. Bd. v. Gray, 1 F.3d 262, 265 (4th Cir. 1993) (citing Compton v. Alton Steamship Co., 608 F.2d 96, 102 (4th Cir. 1979) ("[T]he court should in every case give some, though not controlling, consideration to the question whether the party in whose favor judgment has been entered will be unfairly prejudiced by the vacation of his judgment.")). Thus, the relevant inquiry relates to the prejudice suffered by the nonmovant from vacating the original district court judgment and, at the very least, reopening the § 2255 proceedings. From there, Petitioner's amended motion to vacate, if successful, would be granted, Petitioner's Indictment would be reinstated, and the criminal proceedings would begin anew.

Petitioner here argues that the Government would not be unfairly prejudiced simply "because it has 'adequate notice and briefing to satisfy any concern of unfair surprise and other interests,' United States v. Al-Muwwakkil, 983 F.3d 748, 757 n.6 (4th Cir. 2020), and 'a full opportunity to present evidence to the contrary,' Massaro v. United States, 538 U.S. 500, 506 (2003)." [CV Doc. 16 at 9]. Petitioner, however, fails to address the practical implications of the relief he seeks; that is, prejudice to the Government from a late-stage evidentiary hearing and, if successful, a trial on what would be – by that time – four-year-old charges.

Conducting an evidentiary hearing now regarding Petitioner's counsel's representation of Petitioner in 2019 would prove problematic. Memories erode and witnesses disperse with the passage of time. Brecht v. Abrahamson, 509 U.S. 619, 637 (1993). To be sure, as Petitioner acknowledges, his attorney for his criminal proceedings is "no longer at the defender's office." [CV Doc. 16 at 4 n.7]. Moreover, similar, even more pronounced, difficulties would accompany a trial at this stage if the Indictment were to be reinstated. Petitioner makes no meaningful showing on the lack of prejudice to the Government. As such, though not determinative, if the Court had

jurisdiction to consider it, this factor would also weigh against reaching the merits of Petitioner's Rule 60(b) motion.

## IV.  CONCLUSION

For the foregoing reasons, the Court will dismiss Petitioner's Section 2255 Motion to Vacate for lack of jurisdiction because the motion is a successive petition and Petitioner has not first obtained permission from the Fourth Circuit Court of Appeals to file the motion.

**IT IS, THEREFORE, ORDERED** that

1.  Petitioner's Motion [Doc. 15] is **DISMISSED** as a successive petition.

2.  **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability.  See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

**IT IS SO ORDERED**.

Signed: October 31, 2022

Kenneth D. Bell
United States District Judge